Terrence J. Coleman   (State Bar No. 172183)
Azin Jalali           (State Bar No. 277326)
PILLSBURY & COLEMAN, LLP
The Transamerica Pyramid
600 Montgomery St., 31st Floor
San Francisco, California 94111
Telephone: (415) 433-8000
Facsimile:  (415) 433-4816
Email: tcoleman@pillsburycoleman.com
       ajalali@pillsburycoleman.com

Attorneys for Plaintiff
CHARLES DIMRY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES DIMRY, <br><br> Plaintiff, <br><br> vs. <br><br> BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN; THE NFL PLAYER SUPPLEMENTAL DISABILITY PLAN; and RETIREMENT BOARD, AS ADMINISTRATOR OF THE BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR RECOVERY OF EMPLOYEE BENEFITS** |

Plaintiff alleges on information and belief as follows:

**JURISDICTION AND VENUE**

1.   This case arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), over which this Court possesses original jurisdiction pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331.

2.   Venue is proper in this District because Defendants breached the terms of the applicable benefit plan in this District. 29 U.S.C. § 1132(e)(2).

///

# THE PARTIES

3. Plaintiff Charles Dimry ("Plaintiff") is an individual who is currently, and at all relevant times was, residing in the State of California.

4. Defendants are the Bert Bell/Pete Rozelle NFL Player Retirement Plan (the "Retirement Plan"), the NFL Player Supplemental Disability Plan (the "Supplemental Plan"), and the Retirement Board, as administrator of the Bert Bell/Pete Rozelle NFL Player Retirement Plan (collectively, the named defendants are referred to as the "NFL Plan" or the "Plan"). The Plan is an employee benefit plan within the meaning of 29 U.S.C. § 1002, created for the benefit of the employees of member teams of the National Football League ("NFL"). The Supplemental Plan was created for the purpose of paying disability benefits in excess of the limits of the Retirement Plan.

# FACTUAL ALLEGATIONS

5. Plaintiff is a former professional football player in the NFL, playing for the Atlanta Falcons, Denver Broncos, Tampa Bay Buccaneers, Philadelphia Eagles, and San Diego Chargers during the years of 1988 - 2000. Plaintiff primarily played as a cornerback, a member of the defensive backfield, covering receivers and defending against offensive plays.

6. Plaintiff has a long history of football injuries including multiple fractures, bruises, strains, tears, and concussions. However, Plaintiff's first major neck injury occurred in 1997. While making a tackle, Plaintiff's head was struck from the side and he experienced radicular symptoms for approximately three weeks. His neck was reinjured approximately two years later by a similar strike during a tackle. This time, his left side was affected more than the right, and over time his symptoms worsened. An MRI revealed a broad-based C5-6 disc protrusion abutting the nerve roots bilaterally.

7. Plaintiff underwent his first cervical fusion surgery in 2000. After the surgery, Plaintiff continued to have neck pain.

8. Under the Plan, a player may be entitled to a monthly Line-of-Duty ("LOD") disability benefit if that player incurs a "substantial disablement" arising out of NFL football activities. The Plan also provides a separate Total and Permanent ("T&P") disability benefit, which is payable where a former player "has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit . . . and []

that such condition is permanent." The Plan makes clear that "any occupation or employment for remuneration or profit" is limited to such occupations or employment that would pay more than $30,000 annually: "A Player will not be considered to be able to engage in any occupation or employment for remuneration … merely because such person … receives up to $30,000 per year in earned income." A disability is further considered "permanent" if "it has persisted or is expected to persist for at least twelve months from the date of its occurrence, excluding any reasonably possible recovery period." A Player may apply for both LOD and T&P benefits, or for either benefit separately.

9. Plaintiff received coverage under the Plan as a "participant" as defined by 29 U.S.C. § 1002(7).

10. At all material times herein, Plaintiff complied with all the material provisions pertaining to the Plan or compliance was waived by Defendants, or both.

11. On July 30, 2008, Plaintiff applied for LOD disability benefits based on his ongoing neck pain stemming from his injuries sustained in the NFL, and was determined by the Plan to have suffered a substantial disablement. Benefits were approved and instated effective October 1, 2008.

12. In 2010, Plaintiff began to experience progressively worse pain and numbness of the left arm, forearm, and fingers, and worsening lower back pain. He also began experiencing increasing knee pain. Plaintiff was unable to stand, sit for extended periods, or lift. In June 2011, Plaintiff underwent a two-level fusion, removing the original C5-6 plate and extending the initial fusion at C5-6 to include C6-7. Following the surgery, Plaintiff further reduced his hours as a training director at Strategic Sports Ventures, and eventually ceased all work entirely.

13. On June 14, 2011, Plaintiff submitted his first application for T&P benefits based on his worsening condition. The Plan denied his application on September 6, 2011. Plaintiff appealed the denial on November 8, 2011, and the Plan denied his appeal on May 10, 2012.

14. On December 10, 2014, Plaintiff submitted a second application for T&P benefits. With his second application Plaintiff submitted additional and overwhelming evidence establishing his T&P disability, including supportive medical reports from no less than six doctors and a functional capacity report. On February 5, 2015, the Plan denied Plaintiff's application based on the report of a Plan physician, Dr. Steven Meier, who was paid approximately $188,683 in compensation from the

Plan at the time of his report.

15. Plaintiff appealed the Plan's denial on August 3, 2015.

16. After receiving Plaintiff's August 3, 2015 appeal, the Plan scheduled a supposed "neutral physician medical examination" in San Francisco at the office of another Plan physician, James Chen, M.D.

17. The Plan regularly holds "specialist meetings" of physicians it utilizes to examine players. In the course of these meetings, physicians, including Dr. Chen, are instructed to render disability determinations in a way that contradicts and contravenes the terms of the Plan by, among other things, ignoring vocational information bearing upon a player's ability to maintain employment that would exceed $30,000 in annual income, ignoring the opinions and conclusions of treating physicians, and ignoring the impact of pain on a player's ability to maintain employment. Pursuant to a uniform practice employed in all NFL disability claims, the Plan did not provide Dr. Chen with a definition of T&P disability, nor did it provide relevant vocational information. Dr. Chen, like all other Plan physicians, has no vocational training. In spite of these material omissions, the Plan uniformly defers to its "neutral" physician rather than exercising its own discretion, as required by the Plan's written terms, and without regard to the evaluations, opinions and conclusions of Plaintiff's treating physicians, all of whom fully support Plaintiff's disability.

18. With no relevant vocational information or training, Dr. Chen improperly provided his opinion that Plaintiff "is not totally disabled . . . he could do desk or sedentary work." On December 2, 2015, the Plan affirmed in writing its prior denial of T&P benefits based on the report of Dr. Chen, "credit[ing]" his findings over the findings of Plaintiff's treating physicians. In its December 2, 2015 denial letter, the Plan informed Plaintiff that the Plan "uniformly accept[s]" the reports of doctors hired by the NFL. *See* Dkt. No. 13-5 at p. 2. By "uniformly accept[ing]" Dr. Chen's opinion in this case, the Plan adopted wholesale Dr. Chen's untrained opinion that Plaintiff is "capable of employment" without exercising any discretion at all, and in wholesale disregard of the evaluations, opinions and conclusions of Plaintiff's treating physicians. The Plan's reliance on Dr. Chen's vague conclusion that Plaintiff is "capable of employment" contradicts the Plan's prior determination that Plaintiff suffers from a substantial disablement that qualifies him for LOD disability benefits.

19. The Plan's blind and uniform acceptance of the reports of its hired evaluating physicians regularly occurs in claims submitted by other players participating in the Plan. The Plan consciously, unreasonably, and intentionally and without justification applies a systematic practice in all NFL disability claims whereby the Plan uniformly defers to its "neutral" hired-physicians rather than exercising its own discretion, as required by the Plan's written terms, and rather than giving any weight to the evaluations, opinions and conclusions of the players' treating physicians. Moreover, the Plan fails to train or inform its physicians on the proper criteria for determining vocational potential for its disabled players. These systematic practices occurred in *Berton v. Bert Bell/Pete Rozelle NFL Player Ret. Plan, et al.*, No. 1:15-cv-3000, (D. Md. Filed Oct. 2, 2015). In that matter, the Plan hired a doctor to render an opinion that ignored and contradicted the opinions of the player's treating doctors, concluding that the player "could engage in sedentary work, without any indication of the type of work available to somebody in [the player's] condition." This practice is a common occurrence in NFL T&P disability claims.

20. On March 23, 2016, Plaintiff filed suit against the Plan in this Court, Case No. 3:16-cv-01413 (the "2016 Action"), alleging, among other things, that the Plan's actions were contrary to the written terms of the Plan, that its conclusions had no reliable evidentiary support, that it ignored the definition of T&P disability, and that its actions were contrary to the reports and assessments of the doctors who have evaluated and treated Plaintiff, constituting an abuse of discretion.

21. On August 9, 2016, while the 2016 Action was pending, the Social Security Administration, in a detailed opinion authored by an Administrative Law Judge, found Plaintiff to be disabled from all gainful employment since October 1, 2012, due to severe impairments in Plaintiff's cervical and lumbar spine. In particular, the Administrative Law Judge, after considering the evidence, found that Plaintiff "clearly has significant problems, primarily related to the head and neck injuries he sustained while playing professional football, and that he now has pain and functional difficulties that make it difficult for him to perform even sedentary activities on a consistent basis."

22. On March 12, 2018, this Court issued its decision that the Plan's denial of benefits to Plaintiff was an abuse of discretion. Among other things, the Court noted that the sizable payments to Dr. Meier raised a fair inference of a financial conflict, determined that the Plan "denied benefits based

upon an unreasonable bias in favor of Plan-selected physicians" and remanded to the Plan for re-evaluation of Plaintiff's claim for benefits, indicating consideration of the previously unavailable Social Security Administration decision would be appropriate.

23. Following this Court's remand, the Plan failed and refused to re-evaluate Plaintiff's claim for benefits in a manner consistent with the terms of the Plan and this Court's March 12, 2018 Order. By letter dated August 27, 2018, the Plan again denied Plaintiff's claim for T&P benefits. In rendering its decision, the Plan announced that it "strongly disagrees with Judge Donato's suggestion that Plan neutral physicians are 'financially conflicted' or incentivized 'to shade reports and conclusions' in a way that undercuts Player applications." Similarly, the Plan announced that it disagreed with the Court's determination that it exercised an unreasonable bias in favor of the Plan's physicians. The Plan thus determined not to alter its practice of uniformly accepting the opinions of Plan physicians, and in rendering its further decision the Plan continued to do so. In this regard, the Plan simply determined to obtain a records review from Dr. Allen W. Jackson, who has been employed by the Plan to perform disability examinations for the Plan since 1998 and has been its medical director since 2013, and thus has an even greater financial conflict than Dr. Meier. Dr. Jackson's reports were plainly erroneous and contradictory. Among other things, Dr. Jackson claimed Plaintiff's ongoing pain was legitimately physiological, claimed the severity of Plaintiff's pain was "unquantifiable," and yet concluded that this "unquantifiable" level of pain would somehow not preclude sedentary or light work. In reaching this conclusion, Dr. Jackson had no relevant vocational information and failed to indicate the type of work available to Plaintiff, and the Plan made no investigation or determination that Plaintiff could be expected to earn more than $30,000 annually from such supposed sedentary or light occupations.

24. The Plan's August 27, 2018 denial is the Plan's "final decision on review within the meaning of [ERISA]," and thus Plaintiff has exhausted all necessary pre-suit remedies available to him.

25. As a direct and proximate result of the aforementioned acts of Defendants, and each of them, Plaintiff suffered damages as outlined below.

26. As a result of the actions of Defendants, and each of them, Plaintiff has been improperly

denied T&P benefits, together with interest thereon, and has suffered further and severe economic hardship and emotional distress, whereas the Plan wrongfully financially benefitted from denying Plaintiff's T&P claim.

27. As a further result of the actions of Defendants, and each of them, Plaintiff has been required to engage the services of legal counsel for the purpose of obtaining his benefits.

## FIRST CAUSE OF ACTION

**Recovery Of Employee Benefits: T&P Benefits**
**(Against Defendants; 29 U.S.C. § 1132(a)(1)(B))**

28. Plaintiff realleges and incorporates by reference herein, Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

29. Plaintiff has exhausted his remedies, as described above, and otherwise satisfied all prerequisites to filing this action.

30. At all material times herein, Plaintiff has complied with all the material provisions pertaining to the Plan and/or compliance has been waived or Defendants are estopped from asserting non-compliance.

31. While the Plan was in full force and effect, Plaintiff became and remains totally disabled and entitled to receive T&P benefits under the Plan.

32. Contrary to the evidence and arguments presented to them, Defendants unlawfully denied Plaintiff's claim for T&P disability benefits, and have refused and continue to refuse to make T&P disability payments to Plaintiff in the appropriate amount due.

33. Defendants' refusal to instate Plaintiff's T&P disability benefits violates the terms of the Plan and applicable ERISA regulations, and Defendants' actions constitute an abuse of discretion. At all material times herein, Defendants, and each of them, failed and refused to honor the Plan. Defendants are therefore liable for all benefits due under the Plan.

34. As a proximate result of Defendants' actions, Plaintiff has been deprived of his T&P disability benefits to which he was and is entitled, and has suffered damages as set forth above in paragraphs 25-27.

/ / /

WHEREFORE, Plaintiff prays as follows:

1. For a determination that Plaintiff is entitled to receive benefits under the Plan and an injunction mandating the payment of benefits to Plaintiff for the maximum benefit period under the Plan;

2. For damages according to proof;

3. For general damages according to proof;

4. For attorneys' fees and costs of suit incurred herein pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g);

5. For prejudgment interest on all LTD benefits that have accrued prior to the judgment; and

6. For such other and further relief as the Court may find appropriate.

Dated: August 26, 2019                              PILLSBURY & COLEMAN, LLP

                                                    By: /s/ *Terrence J. Coleman*
                                                        Terrence J. Coleman
                                                        Azin Jalali
                                                        Attorneys for Plaintiff
                                                        CHARLES DIMRY