UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES DIMRY,<br><br>        Plaintiff,<br><br>    v.<br><br>BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN, et al.,<br><br>        Defendants. | Case No. 19-cv-05360-JSC<br><br>**ORDER RE: CONFLICT DISCOVERY DISPUTE**<br><br>Re: Dkt. No. 31 |

Plaintiff is a former player in the National Football League. He challenges the decision of the Retirement Board of the Bert Bell/Pete Rozelle NFL Player Retirement Plan (the "Plan") to deny him total and permanent disability benefits under the Plan and the Employee Retirement Income Security Act of 1974 ("ERISA"). Now pending before the Court is a joint discovery dispute letter regarding Plaintiff's demand that the Plan produce certain documents. (Dkt. No. 31.) The letter is a follow-up to a previous letter (Dkt. No. 23) and hearing the Court held in February 2020. (Dkt. No. 27.) Plaintiff seeks:

> Unredacted copies of the contracts between the NFL and Steven Meier, M.D., James Chen, M.D., and Allen W. Jackson, M.D., and all records reflecting the total payments paid to each physician from any NFL plan for the year in which he examined Charles Dimry or provided a report on him.

> The training manuals, procedures, guidelines, agenda notes, power point slides, handouts, and memoranda from the physician meetings applicable to Steven Meier, M.D., James Chen, M.D., and Allen W. Jackson, M.D. from 2014 to present.

(Dkt. No. 31 at 1.) After carefully considering the pending letter, as well as the initial letter and arguments made at the earlier hearing, the Court concludes that no further argument is necessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and grants in part and denies in part Plaintiff's discovery request.

**DISCUSSION**

Material is discoverable if it is relevant to a claim or defense. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff contends that the documents/information he seeks are relevant to whether the physicians that opined on his disability had a financial conflict of interest that warrants this Court giving "some skepticism" to the Plan's disability determination. The Plan opposes providing any further discovery.

If an ERISA plan gives the plan administrator discretion to make a benefits determination, and the plan administrator does not have a conflict of interest, "judicial review of a plan administrator's benefits determination involves a straightforward application of the abuse of discretion standard." *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009). "Commonly, however, the same entity that funds an ERISA benefits plan also evaluates claims, as is the case here." *Id.* at 630. "Under these circumstances, the plan administrator faces a structural conflict of interest: since it is also the insurer, benefits are paid out of the administrator's own pocket, so by denying benefits, the administrator retains money for itself. Application of the abuse of discretion standard therefore requires a more complex analysis." *Id.*; *see also Metropolitan Life Ins. v. Glenn*, 554 U.S. 105, 112 (2008) (holding that a conflict exists because "every dollar provided in benefits is a dollar spent by ... the employer; and every dollar saved ... is a dollar in [the employer's] pocket.") (internal quotation marks and citation omitted).

The Plan is funded by the NFL owners. It does not, however, have a structural conflict of interest as a matter of law because it is a multi-employer benefit trust fund maintained under the Taft–Hartley Act. *See Anderson v. Suburban Teamsters of Northern Illinois Pension Fund Bd. Of Trustees*, 588 F.3d 641, 648 (9th Cir. 2009). "The various participating employers—not the Trustees—fund the Plan. The Trustees have no personal economic interest in the decision to grant or deny benefits. Additionally, the Board of Trustees consists of both employer and employee representatives, who determine employee eligibility under the Plan. Both sides are at the table." *Id; see also Boyd v. Bert Bell/Pete Rozelle NFL Retirement Plan*, 796 F.Supp.2d 682, 690-91 (D. Md. 2011) (finding that the Bert Bell/Pete Rozelle Plan does not have a structural conflict of interest).

Relying on *Demer v. IBM Corp. LTD,* 835 F.3d 893, 900 & n.3 (9th Cir. 2016), Plaintiff nonetheless contends that the materials he seeks are relevant to whether some skepticism should be given to the Plan's decision. In *Demer*, the plan sponsor—Met Life—was also the plan administrator. However, the district court did not apply any skepticism to its benefits determination because MetLife had "taken affirmative steps to reduce potential bias and promote accurate claim determinations" *Id.* at 900 (quoting the district court opinion). On appeal, Demer argued that the district court erred in concluding that MetLife had sufficiently mitigated its structural conflict of interest. The Ninth Circuit determined that it did not need to reach that issue because even assuming MetLife had sufficiently accounted for its structural conflict of interest, "some skepticism" was warranted because of the financial conflict of the independent physicians upon whom MetLife relied. *Id.* at 901 ("[e]ven if MetLife operated with no structural conflict, reliance on the reports of its retained experts who have a financial incentive to make findings favorable to MetLife may warrant skepticism."). In particular, the court held that the evidence that the independent physicians earned a substantial amount of money from Met Life each year and had performed a substantial number of reviews for MetLife as well "raise[d] a fair inference that there is a financial conflict which influenced" their evaluations and thus should be considered in reviewing MetLife's decision for an abuse of discretion. *Id.* at 902.

Upon review of *Demer,* the Court was persuaded that the Plan should produce its agreements with the independent physicians as those agreements might reveal a financial incentive to rule in favor of the Plan and thus ordered the Plan to produce the documents. The Plan did so (with the amount of the payments redacted), but the agreements did not obviously reveal any such incentive; instead, the Plan pays the physicians a set amount per examination regardless of the physician's ultimate decision. (Dkt. No. 31-1.) Plaintiffs nonetheless insist that the Plan should disclose the amount of money each contract requires the Plan to pay the independent physician for each examination and the total amount the Plan paid each physician during the year they evaluated Mr. Dimry, and as well any Plan training materials related to each physician.

*Demer* does not help Plaintiff with his request for training materials: they are not relevant to a potential financial conflict of interest. Further as explained above, the Ninth Circuit has held

3

1   that a Taft-Hartley plan does not have a structural conflict and, in any event, such material is not
2   relevant to a structural conflict. Thus, it is perhaps unsurprising that Plaintiff does not cite any
3   case from any jurisdiction that has allowed such discovery in an ERISA disability case. This
4   Court is not persuaded it should be the first as there is nothing in this record that suggests such
5   materials will reveal some other conflict that no court has yet to identify as warranting skepticism
6   in the abuse of discretion analysis. Indeed, to grant Plaintiff's request here would mean such
7   material would be discoverable in *every* ERISA disability benefits case.

The analysis is different as to the request for specific compensation information. While *Demer* did not explain why the amount of compensation to the independent physicians and the number of times MetLife retained the physicians gave rise to a "fair inference" of a financial incentive to make a no disability determination, *Demer*, 835 F.3d at 910 (Bybee, J., dissenting, but concurring in the judgment) (noting that the majority offers "no explanation why an outside reviewer has a conflict of interest by virtue of being compensated for her time"), it is binding on this Court and thus must be considered.

There is an argument that *Demer* is distinguishable because it involved a structural conflict that had been mitigated whereas here there is no structural conflict as it is a Taft-Hartley plan. In *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 859 n.5 (7th Cir. 2009), for example, the Seventh Circuit indicated that how much a medical examiner is paid by the plan could be relevant to a financial conflict of interest "when the professional's bill is paid by an insurance company (or a self-insured employer) with an interest in receiving a report that minimizes, or discounts, a disability claim."); *see also Fessenden v. Reliance Standard Life Ins. Co.*, No. 3:15-CV-370-WCL-CAN, 2016 WL 7239917, at *4 (N.D. Ind. Dec. 15, 2016) (citing *Demer* and agreeing in a case with a structural conflict that how much a plan administrator has compensated an independent medical examiner over time "could indeed raise a fair inference that the financial conflict influenced" the denial of the disability claim).

The issue here, however, is what is discoverable. The Court cannot find that the amount of compensation the Plan paid each physician during the year the physician prepared the report on Plaintiff, and the amount the physician was paid for evaluating Plaintiff, is wholly irrelevant and

4

thus not discoverable in light of *Demer* and the district court's decision in Plaintiff's first case. *Dimry v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, 2018 WL 1258147 *3 (N.D. Cal. March 12, 2018); *see also* Fed. R. Civ. P. 26(b)(1)(stating that information need not be admissible to be discoverable). And the Plan has not articulated any other reason, such as burden, that would justify denying Plaintiff this limited discovery. Accordingly, within two weeks of this Order, the Plan shall provide Plaintiff with records sufficient to show the total amount of compensation paid to each physician for the year the physician examined Plaintiff or provided a report on him, as well as the amount of money the physician was paid for the examination/report. In all other respects the motion to compel is denied.

This Order disposes of Docket No. 31.

**IT IS SO ORDERED.**

Dated: April 14, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge