United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES DIMRY,<br><br>    Plaintiff,<br><br>v.<br><br>BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN, et al.,<br><br>    Defendants. | Case No. 19-cv-05360-JSC<br><br>**ORDER RE: RULE 52 MOTIONS**<br>Re: Dkt. Nos. 74, 75 |

Charles Dimry is a former player in the National Football League. He challenges the decision of the Retirement Board of the Bert Bell/Pete Rozelle NFL Player Retirement Plan (the "Retirement Board") to deny him total and permanent disability benefits under the Plan and the Employee Retirement Income Security Act of 1974 ("ERISA"). The Court previously found that the Retirement Board abused its discretion and denied Mr. Dimry full and fair review of his disability claim under ERISA. (Dkt. No. 46.) On appeal, the Ninth Circuit Court of Appeals affirmed and remanded to this Court to determine whether Mr. Dimry is entitled to benefits. (Dkt. No 64.) *See Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 855 F. App'x 332, 334 (9th Cir. 2021). On remand, Mr. Dimry was permitted to provide additional evidence in support of his disability claim. (Dkt. No. 72.) Having done so, both parties now seek judgment in their favor under Federal Rule of Civil Procedure 52. (Dkt. Nos. 74, 75.) After considering the parties' briefs and the relevant legal authority, the Court concludes that oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS judgment in Mr. Dimry's favor. The Retirement Board abused its discretion when it denied Mr. Dimry's disability benefits application the second time and considering the evidence before the Court, Mr. Dimry is under a permanent and total disability under Section 5.2(a) of the Plan and therefore is entitled to Plan benefits.

**BACKGROUND**

Mr. Dimry applied for Total and Permanent (T&P) Disability benefits under the Bert Bell/Pete Rozelle NFL Player Retirement Plan in 2014.[1] The Plan provides that an individual qualifies for T&P benefits if he is "substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit." (SAR 87) (citing Plan Section 5.2(a).) The following year, the Retirement Board's Disability Initial Claims Committee denied Mr. Dimry's application finding that he was not totally and permanently disabled because (1) the neutral orthopedist found that he was employable, and (2) he had not presented evidence that he received Social Security disability benefits. (SAR 259.)

Mr. Dimry filed an ERISA complaint challenging the denial of benefits. *See Dimry v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, No. 16-CV-01413-JD (N.D. Cal.). Shortly thereafter, the Social Security Administration granted Mr. Dimry's application for disability insurance benefits finding that Mr. Dimry has been disabled since October 1, 2012. (SAR 9.) In 2018, the district court granted judgment in Mr. Dimry's favor. The district court concluded that the Plan's denial of Mr. Dimry's benefits claim was "based upon an unreasonable bias in favor of Plan-selected physicians" and remanded the matter to the Retirement Board to re-evaluate Mr. Dimry's T&P benefits claim. *Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 16-CV-01413-JD, 2018 WL 1258147, at *4 (N.D. Cal. Mar. 12, 2018) ("*Dimry I*").

On remand, the Retirement Board again denied Mr. Dimry's claim, this time based solely on a review of the record by the Retirement Board's Medical Director Dr. Jackson. Mr. Dimry then filed this ERISA action, again seeking to recover benefits from the Plan. The parties thereafter filed cross-motions for judgment on the administrative record. The Court granted Plaintiff's motion finding that the Retirement Board abused its discretion in denying Mr. Dimry's disability claim a second time. (Dkt. No. 46 ("*Dimry II*".) In particular, the Court concluded that the Retirement Board denied Mr. Dimry the full and fair review he was entitled to under ERISA when it (1) excluded him from the renewed review of his appeal; (2) required Mr. Dimry's

---

[1] The Court incorporates the more detailed background facts set forth in its previous order. (Dkt. No. 46.)

subjective reports of pain to be supported by objective medical evidence although neither the Retirement Board nor the Retirement Board's Medical Director, Dr. Jackson, imposed such a requirement; and (3) disregarded Mr. Dimry's subsequent Social Security award without a reasoned explanation. (*Id*. at 7-15.) The Court concluded that remand was the appropriate remedy because while the Court expected Mr. Dimry to be found disabled, the Court could not make this finding in the first instance because "the Board did not ask Dr. Jackson—on whose opinion it exclusively relied in denying Mr. Dimry's claim on remand—whether given his subjective reports of pain, if objective evidence was not required, Mr. Dimry had a total and permanent disability." (*Id*. at 17.)

The parties filed cross-appeals and the Ninth Circuit affirmed finding that "[w]e agree with the district court in *Dimry II* that the Retirement Board's actions on remand, following *Dimry I*, violated the requirement of 'meaningful dialogue between ERISA plan administrators and their beneficiaries.'" *Dimry*, 855 F. App'x at 333–34 (quoting *Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997)). The Ninth Circuit remanded the case to this Court "to determine whether Dimry is entitled to benefits." *Id*. at 334. In particular, the Ninth Circuit directed:

> Where procedural irregularities have prevented full development of the administrative record, the district court "must permit the participant to present additional evidence." *Abatie v. Alta Health & Life Ins. Co*., 458 F.3d 955, 973 (9th Cir. 2006) (en banc). After taking into account all of the evidence and "determining the degree of deference (if any)" owed to the Plan, "the district court must then determine whether [the beneficiary] is permanently disabled." *Saffon* [*Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 873 (9th Cir. 2008)]; *see also Abatie*, 458 F.3d at 974 (remanding to district court rather than plan administrator).

*Dimry II*, 855 F. App'x at 334.

## DISCUSSION

Under the Plan, an eligible player "will be deemed to be totally and permanently disabled if the Retirement Board… finds (1) that he has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit… and (2) that such condition is permanent." (SAR 53, Sec. 5.2(a).) Mr. Dimry sought disability benefits based on cervical and lumbar spine degenerative disc disease,

3

bilateral knee injuries, kidney disease, and Crohn's disease.  (AR 150-154.)

### A. The Retirement Board Abused its Discretion

The Plan gives the Retirement Board discretion to decide claims for benefits and thus, as the Court previously concluded, an abuse of discretion standard applies.  (Dkt. No. 46 at 4.)  The Retirement Board argues that under that standard, the existence of a single persuasive medical opinion supporting the decision to deny benefits is sufficient to affirm.  (Dkt. No. 74 at 8 (citing *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629-30 (9th Cir. 2009).)  It insists that Dr. Jackson's opinion, supported by two neutral physicians, is such an opinion even if Mr. Dimry has offered evidence that conflicts with that opinion.  The Court disagrees.

First, it is undisputed that the Plan does not require objective medical evidence to support a disability claim.  (Dkt. No. 46 at 11 (citing *Moody v. Liberty Life Assur. Co. of Bos.*, 595 F. Supp. 2d 1090, 1098 (N.D. Cal. 2009) (holding that a plan "cannot exclude a claim for lack of objective medical evidence unless the objective medical evidence standard was made clear, plain and conspicuous enough in the policy to negate layman plaintiff's objectively reasonable expectations of coverage") (internal quotation marks and citation omitted)).)  "It is unreasonable to reject a claimant's self-reported evidence where the plan administrator has no basis for believing it is unreliable, and where the ERISA plan does not limit proof to 'objective' evidence." *Stratton v. Life Ins. Co. of N. Am.*, No. 20-CV-2037 JLS (NLS), —F.Supp.3d—, 2022 WL 712926, at *22 (S.D. Cal. Mar. 8, 2022) (cleaned up).

Second, Dr. Jackson did not find that Mr. Dimry's claim of neck and back pain was not credible because it was not supported by objective evidence; instead, he opined that there was no objective evidence *if* objective evidence was required.  (Dkt. No. 46 at 10.)  Indeed, he agreed that the pain Mr. Dimry could be experiencing would not necessarily correlate with objective medical findings.  (*Id.*)  It makes no sense for Dr. Jackson to opine that the pain may be real and severe even without certain objective evidence and then conclude that the pain is not sufficiently severe because of a lack of objective evidence.  Thus, Dr. Jackson's opinion is not persuasive and is instead "illogical" and "implausible."  *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2010); *see also Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522

4

F.3d 863, 872 (9th Cir. 2008) (noting that "individual reactions to pain are subjective and not easily determined by reference to objective measurements"); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989) ("[P]ain is a completely subjective phenomenon" and "cannot be objectively verified or measured").

Third, before Dr. Jackson issued his opinion, the Social Security Administration (SSA) found that Mr. Dimry was disabled as of October 1, 2012. (SAR at 9.) Significantly, the Administrative Law Judge ("ALJ") specifically found that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause his alleged symptoms and that his statements concerning the intensity, persistence and limiting effects of these symptoms are reasonably consistent with the medical evidence and other evidence in the record.
>
> Indeed, the medical evidence fully supports the claimant's allegations and documents his ongoing difficulties, particularly in regard to his neck.

(SAR 13 (emphasis added).) In other words, the ALJ found that Mr. Dimry's impairments could be reasonably expected to cause his debilitating pain; that is, that the objective evidence of his impairments supported his allegations of pain. (*See also* AR 13 ("clearly has significant problems, primarily related to the head and neck injuries he sustained while playing professional football, and that he now has pain and functional difficulties that make it difficult for him to perform even sedentary activities on a consistent basis.").) While Dr. Jackson was not required to accept the ALJ's opinion, because he did not address it other than to state that he reviewed it, his opinion is not an adequate reason for rejecting the SSA findings. *See Montour*, 588 F.3d at 635 ("While ERISA plan administrators are not bound by the SSA's determination, complete disregard for a contrary conclusion without so much as an explanation raises questions about whether an adverse benefits determination was the product of a principled and deliberative reasoning process.") (internal citation and quotation marks omitted). And the other reasons given by the Retirement Board for rejecting the SSA's findings are illogical and implausible as the Court previously found. (Dkt. No. 46 at 13.)

Fourth, the Plan did not address Dr. Murphy's November 2021 opinion that Dr. Jackson's

descriptions of Dr. Murphy's post-surgery neurological examinations as normal are "not accurate." (Dkt. No. 74-1 at 4.) Dr. Jackson's evaluation of Dr. Murphy's examinations as "normal" was key to his ultimate conclusion that the objective evidence did not support Mr. Dimry's complaints of debilitating pain. That Dr. Jackson could not respond to Dr. Murphy's refutation of Dr. Jackson because of the Plan's failure to provide Mr. Dimry with a full and fair review in the second (and first) instance is of no moment. *See Saffon*, 522 F.3d at 874.

Finally, the Retirement Board's decision is owed little deference. In considering the degree of deference to which the Plan is entitled, the Court must consider the Retirement Board's course of dealing with Mr. Dimry. *Id.* at 873. The course of dealing suggests an intent to deny Mr. Dimry's benefits application regardless of the evidence. In denying Mr. Dimry's initial application, the Retirement Board noted "potentially conflicting medical evidence contained in the record," but it did not resolve the conflicts by examining the evidence or delving into the record before it. *Dimry I*, 2018 WL 1258147, at *4. Instead, the Retirement Board "simply adopted the opinions of its retained physicians by default." *Id*. In so doing, the Retirement Board showed an unreasonable bias in favor of Plan-selected physicians.

Likewise, while the Retirement Board initially denied Mr. Dimry's benefits application based on Mr. Dimry's failure to be awarded social security benefits, after his application for social security benefits was granted and Mr. Dimry's application was remanded in *Dimry I*, Dr. Jackson did not even review the social security record or give any weight to the ALJ's finding. (SAR 18, 26, 259.) On review, the Retirement Board doubled down and generically concluded that the SSA's grant of benefits "did not alter its independent conclusion that the evidence surrounding [Mr. Dimry's] December 2014 application did not show that [he] was totally and permanently disabled under the terms of the Plan." (SAR 18, 26, 50, 259.) In so doing, the Retirement Board made up its own implausible reasons for disregarding the SSA's decision that were not "the result of a principled reasoning process." *Glenn v. MetLife*, 461 F.3d 660, 674 (6th Cir. 2006), aff'd sub nom. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). (Dkt. No. 46 at 14.)

Further, after remand in *Dimry I*, the Plan directed its own Medical Director—Dr. Jackson—to review the record as part of the remand process, but it kept Mr. Dimry entirely in the

6

1  dark thus, as the Ninth Circuit concluded, denying him "a full and fair review under ERISA."

2  *Dimry II*, 855 Appx. 332 (9th Cir. Aug. 10, 2021).

3        In light of this course of conduct, little deference is owed to the Retirement Board's

4  decision. And for all the reasons explained above, the Retirement Board abused its discretion

5  when it denied Mr. Dimry's benefits applications for the second time.

6        **B. Whether Mr. Dimry's Pain Demonstrates Total and Permanent Disability**

7        Notwithstanding the Retirement Board's abuse of its discretion, the Court could not award

8  benefits if the record did not otherwise support a finding of permanent disability within the Plan's

9  terms. The record does. Each of Mr. Dimry's treating and examining physicians recorded his

10 debilitating reports of pain.

11       Dr. Miller, who treated Mr. Dimry for chronic neck and low back pain, stated in his March

12 2014 report that Mr. Dimry complained of radiating pain to the buttocks and numbness in his right

13 lower extremity. (SAR 172.) Mr. Dimry rated his pain as 8/10. (*Id*.) Mr. Dimry reported that the

14 pain was better when he was lying flat on his back and worsened with prolonged standing,

15 prolonged sitting, walking, climbing stairs, and lifting objects. (*Id*.)

16       Mr. Dimry's physical therapist, Dr. Snow, reported that Mr. Dimry had "continuous pain

17 into his cervical spine which limits his ability to drive and that he cannot "tolerate standing,

18 sitting, reading and computer work for more than 50 mins." (SAR 175.)

19       Finally, Mr. Dimry's treating physician, Dr. Murphy, noted in his April 2014 report that

20 Mr. Dimry's "pain has remained chronic since his most recent surgery in 2011, and is described as

21 severe at times." (SAR 156.) Mr. Dimry complained of constant pain in his neck and low back at

22 a 7-8/10, as well as knee pain which is at about a 4 or 5, but can go as high as 6. (SAR at 157.)

23 Mr. Dimry reported that it was hard to stand for more than 30 minutes, walk more than 15 to 20

24 minutes, lift more than 10 or 15 pounds, do housework, and that he could not sit at a computer for

25 more than 10 to 15 minutes. (SAR at 158.) Dr. Murphy conducted a medical exam, reviewed

26 Mr. Dimry's X-rays, and concluded that Mr. Dimry was "unable to be employed, due to the fact

27 that he has severe pain with symptoms that are commensurate with his injury and consistent with

28 his injuries." (SAR 106.) In his attached physical residual functional capacity questionnaire, Dr.

1  Murphy found that Mr. Dimry was in constant pain, that he was incapable of even low stress jobs,
2  that he could only stand or sit for 15 minutes at a time for a total of two hours sitting and standing
3  each day, and that he would need to take three to four unscheduled breaks each day.  (SAR 165-
4  166.)  Dr. Jackson reviewed Dr. Murphy's report and found that Dr. "Murphy's opinion [wa]s
5  entitled to great weight as he has a lengthy treating relationship with the claimant and has provided
6  information about the claimant's condition, symptoms and functional limitations that are
7  extremely well supported by the objective findings."  (SAR 25.)
8        In his November 2021 report, Dr. Murphy reviewed the reports Dr. Jackson prepared
9  following remand and Mr. Dimry's entire medical file and concluded that:

> The patient has demonstrated that he suffers residual chronic pain with associated radiculopathy that are commensurate with and consistent with his spinal injuries. I find his complaints of pain to be credible and have no doubts about Mr. Dimry's earnest reporting. When assessing his total disability, I have also taken into consideration his comorbidities including chronic left knee pain and instability, stage 3A chronic kidney disease and Crohn's disease. Symptoms from kidney disease and Crohn's disease include back and abdominal pain, cramping and fatigue. These conditions also severely limit the patient's ability to use pain medications and nonsteroidal anti-inflammatory medications. Taking all of this into consideration, it remains my opinion that the restrictions prescribed in the April 16, 2014 physical functional capacity questionnaire are accurate and reflect Mr. Dimry's functional ability in light of his persistent symptoms.

18  (Dkt. No. 74-1 at 6.)
19        The Retirement Board's neutral examining physicians likewise corroborated Mr. Dimry's
20  reports of pain.  Dr. Meier examined Mr. Dimry in January 2015 and noted that "[d]uring his 35
21  minute history intake interview, Mr. Dimry stood up 3 times due to pain and to stretch his
22  lumbosacral spine."  (SAR 235.)  Dr. Meier also documents Mr. Dimry's reports of "constant
23  sharp to dull pain" in his cervical spine, "occasional sharp pain that radiates to his right leg" and
24  associated numbness and tingling, and "occasional dull pain" in both his knees.  (SAR 232-233.)
25  During his examination, Dr. Meier administered several tests to determine whether Mr. Dimry was
26  exaggerating and none demonstrated that Mr. Dimry was exaggerating his symptoms.  (SAR 241-
27  242.)  Dr. Chen examined Plaintiff in September 2015 and noted that Plaintiff complained of
28  "constant pain in his lower back and upper neck area."  (SAR 357.)  Dr. Chen noted that Mr.

Dimry "cannot walk for more than 10 to 15 minutes… cannot sit for long periods of time…[s]itting to standing is painful." (*Id.*)  Finally, Dr. Chen described Plaintiff as having "appropriate pain responses."  (SAR 363.)

Accordingly, the record shows that Mr. Dimry's pain renders him "substantially unable to engage in any occupation or employment for remuneration or profit" on a permanent basis.

## CONCLUSION

For the reasons explained above, the Retirement Board abused its discretion when it denied Mr. Dimry's benefits application for the second time and Mr. Dimry has shown that he is entitled to benefits under the Plan's terms.  The Retirement Board acknowledged as much in one of its briefs before the Ninth Circuit:

> [I]f the district court's decision is affirmed, the district court should simply determine for itself whether Dimry is entitled to benefits. Additional discovery about the Plan's supposed structural conflict and the Neutral Physicians' alleged biases would be unnecessary given that *the district court has already determined that the Board abused its discretion, and its decision regarding Dimry's entitlement to benefits is a foregone conclusion*.

*Dimry v. Bert Bell*, et al., No.20-17049,  Dkt. No. 26 at 39, Third Brief on Appeal, Appellant's Response and Reply Brief (9th Cir. March 24, 2021) (emphasis added).  Accordingly, the Court GRANTS Mr. Dimry's motion for judgment under Rule 52 and DENIES Defendants' motion. Mr. Dimry is totally and permanently disabled under the Plan and is entitled to an award of all withheld "Inactive A Total and Permanent" benefits. The parties shall, within 30 days of the date of this Order, (a) meet and confer to resolve the specific amount of disability benefits due Mr. Dimry including interest, and (b) submit a proposed judgment, that is consistent with this Order.

This Order disposes of Docket Nos. 74 and 75.

**IT IS SO ORDERED.**

Dated:  June 1, 2022

JACQUELINE SCOTT CORLEY
United States Magistrate Judge